IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RACHEL NEIL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ALLEGHENY COUNTY, | ) | Civil Action No. 12-0348 |
| CORRECTIONS OFFICER JOHN DOE, | ) | Magistrate Judge Cynthia Reed Eddy |
| individually, | ) | |
| WARDEN RAMON C. RUSTIN, | ) | |
| individually, | ) | |
| THE CITY OF PITTSBURGH, | ) | |
| POLICE OFFICER JOHN DOE | ) | |
| individually | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

### I.     Background

Plaintiff Rachel Neil filed suit pursuant to 42 U.S.C. § 1983, "based on violations of her rights under the Fourteenth Amendment . . . to be free from excessive force and cruel and unusual punishment," against Allegheny County, Allegheny County Jail ("ACJ") Corrections Officer John Doe, individually, ACJ Warden Ramon C. Rustin, individually, the City Of Pittsburgh, and City of Pittsburgh Police Officer John Doe, individually.[1] Amended Complaint, (ECF No. 10), at ¶ 1.

Plaintiff alleges that on January 5, 2011, she was arrested "for minor charges," by City of Pittsburgh Police Officers and transported to the ACJ.  Amended Complaint, (ECF No. 10), at

---

[1] Plaintiff initially also sued the City of Pittsburgh Police Department, but her Amended Complaint dropped the Police Department as a defendant.  In a section 1983 action, police departments and other departments of a municipality are not separate legal entities from the municipality and cannot, therefore, be sued separately.  *See Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 25 n. 4 (3d Cir. 1997); *Reitz v. County of Bucks*, 125 F.3d 139, 148 (3d Cir. 1997).

¶12. "Upon presentation" at the ACJ, and "after she was removed from the police vehicle for transfer to the custody of [ACJ] corrections officers," Plaintiff alleges she was "attacked and repeatedly struck" from behind by an unidentified John Doe Corrections Officer, an unidentified John Doe Pittsburgh Police Officer, and "other" corrections and police officers. Amended Complaint, (ECF No. 10), at ¶ 13. Plaintiff also alleges that she was tasered, and that the attack and tasering occurred while she was restrained by handcuffs and was helpless. Amended Complaint, (ECF No. 10), at ¶ 14. After being placed in a cell in the ACJ, Plaintiff alleges she was sprayed with pepper spray, assaulted, thrown on the floor and stepped on while still in handcuffs, and that she was denied requested necessary medications. Amended Complaint, (ECF No. 10), at ¶¶ 15-16.

When Plaintiff was released from the ACJ later on January 5, 2011, her mother took her to an emergency room; eventually, she was diagnosed by a medical examiner with numerous contusions, closed head injuries, a perforated ear drum, and various cuts, scraps and lacerations. Amended Complaint, (ECF No. 10), at ¶¶ 18-19.

The Amended Complaint further claims that defendant Rustin, as Warden, and the ACJ were aware of "numerous attacks against inmates" by unnamed corrections officers, including allegations of beatings to one named ACJ inmate in February 2009, and that Rustin and the ACJ failed to enforce the ACJ policy against using excessive force and failed to discipline other corrections officers who violated said policy, which failures "resulted" in the "attack" and her injuries on January 5, 2011. Amended Complaint, (ECF No. 10), at ¶¶ 21-28.

As to the City of Pittsburgh, the Amended Complaint claims that it "knew of attacks and excessive uses of force against individuals under arrest by police officers prior to the attack against Ms. Neil," including a "prior beating incident[ ] alleged by Mr. Jordan Miles in January

of 2010," and that the City failed to enforce its policy against the use of excessive force during arrests and failed to discipline other police officers who violated said policy, which failures resulted in the physical assault and injuries Plaintiff sustained on January 5, 2011, including post traumatic stress disorder. Amended Complaint, (ECF No. 10), at ¶¶ 29-36.

Based on these allegations, the Amended Complaint sets forth seven counts: Count I, Fourteenth Amendment, "Violation Of Due Process Through Excessive Use Of Force" against all Defendants; Count II, Fourteenth Amendment, "Failure To Intervene" against the John Doe Defendants; Count III, "Fourteenth Amendment Violation As To Defendant Rustin," individually and in his capacity as ACJ Warden; Count IV, "Fourteenth Amendment Violation (Municipal Liability)" as to Defendant Allegheny County for failure to train, supervise and discipline its corrections officers and deliberate indifference to the rights of inmates and pretrial detainees; Count V, "Fourteenth Amendment Violation (Municipal Liability)" as to the City of Pittsburgh for failure to train, supervise and discipline its police officers and deliberate indifference to the rights of arrestees; Count VI, state common law assault and battery claims against the John Doe Defendants; and Count VII, state common law intentional infliction of emotional distress claims against the John Doe Defendants. Amended Complaint, (ECF No. 10), at ¶¶ 37-70.

Allegheny County, Warden Rustin, and the City of Pittsburgh have filed motions to dismiss the Amended Complaint. Allegheny County/ Rustin Motion to Dismiss (ECF No. 16); City of Pittsburgh Motion to Dismiss (ECF No. 25). For the reasons set forth below, these motions will be granted, Counts I through V against these defendants will be dismissed with prejudice, and defendants Allegheny County, Warden Rustin and the City of Pittsburgh will be dismissed from the case, with prejudice. Only the excessive force, failure to intervene and state

common law claims against the John Doe defendants in their individual capacities will go forward.

## II.     Rule 12(b)(6) Standards

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) challenges the legal sufficiency of a complaint. The United States Supreme Court has instructed that "a plaintiff's obligation to provide the 'grounds' of his '[entitlement] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted) (rejecting the traditional Rule 12(b)(6) "any set of facts" standard set forth in *Conley v. Gibson,* 355 U.S. 41, 45–46 (1957)).[2]

In evaluating a motion to dismiss, the Court must accept as true all well-pleaded facts and allegations and draw all reasonable inferences therefrom in favor of plaintiffs. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Twombly*, 550 U.S. at 555. The "factual allegations must be enough to raise a right to relief above the speculative level." *Id*. The Supreme Court clarified this requirement when it stated that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556). The showing required to overcome a motion to dismiss must establish "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id*. (quoting *Twombly*, 550 U.S. at 557). "This 'plausibility' analysis is 'a context-specific task that requires

---

[2] Counsel for plaintiff continues to misstate the Rule 12(b)(6) standards. As a colleague of this Court recently explained to counsel, the "any set of facts" standard described initially in *Conley* has "earned its retirement" and "is best forgotten." *Kipp v. Allegheny County,* 2012 WL 1463309, *2 (McVerry, J., W.D.Pa. April 27, 2012) (quoting *Twombly,* 550 U.S. at 563).

the reviewing court to draw on its judicial experience and common sense.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679)).

After *Iqbal*, the United States Court of Appeals for the Third Circuit directed that district courts conduct a three pronged analysis to determine the sufficiency of a complaint. First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679). Second, it should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth" *Id*. Third, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id*.

### III.  Substantive Standards

#### A.  Excessive Force

There are three sources of constitutional protection against the use of excessive force by government officials: the Fourth, Eighth and Fourteenth Amendments. *Graham v. Connor*, 490 U.S. 386, 394 (1989). The Fourth Amendment protects free citizens against the use of excessive force by law enforcement officers during the course of an arrest, investigatory stop, or other "seizure." *Id.* at 395. After conviction, the Eighth Amendment prohibition against cruel and unusual punishment protects inmates from the excessive use of force by prison guards during post-conviction incarceration. *Id.* (citing *Whitley v. Albers,* 475 U.S. 312, 327 (1986)). Finally, "the Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment." *Id.* at n. 10 (citing *Bell v. Wolfish,* 441 U.S. 520, 535–539 (1979)). The core judicial inquiry is not whether a certain quantum of injury was sustained, but rather "whether

force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian,* 503 U.S. 1, 7 (1992).

While there may be some factual dispute about whether Pittsburgh Police Officer John Doe attacked Plaintiff, allegedly, before or after she had been transferred to the custody of the ACJ, there is no doubt that under either the Fourth or Fourteenth Amendment, Plaintiff has, at this stage of the proceedings, stated viable claims against the John Doe corrections and police officers. Her claims against the City, Allegheny County and Warden Rustin are, however, another matter.

### B. Municipal and Official Capacity Supervisory Liability

Section 1983 provides a vehicle for litigants to obtain relief from state and local governments, but does not hold governments vicariously liable for all of their employees' miscreant activity. *Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 403 (1997). Rather, state and local governments are responsible only "for their own illegal acts." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986). Thus, a plaintiff bringing a section 1983 action against a state or local government entity must show that an unlawful "action pursuant to official municipal policy" caused his or her injury. *Monell v. Dep't of Social Servs*., 436 U.S. 658, 691 (1978) (municipal liability under section 1983 cannot be based on *respondeat superior*).

In *Monell,* the United States Supreme Court held that a "municipality is only liable when the plaintiff can show that the municipality itself, by implementing a municipal policy, regulation or decision either formally adopted or informally adopted through custom, actually caused the alleged constitutional transgression." *Id.* at 691. "A policy is made when a decisionmaker possessing final authority to establish municipal policy with respect to the action

issues a final proclamation, policy or edict, [and a] custom is an act that has not been formally approved by an appropriate decisionmaker, but that is *so widespread as to have the force of law.*" *Natale v. Camden County Corr. Facility,* 318 F.3d 575, 583–84 (3d Cir. 2003) (emphasis added). *See also Beck v. City of Pittsburgh,* 89 F.3d 966, 971 (3d Cir. 1996) *(*"A municipal custom exists when, though not authorized by law, the practices at issue by state officials "are so permanent and well-settled as to virtually constitute law."); *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990) (same).

In addition, a plaintiff must show that the municipality has acted with "deliberate indifference" to the plaintiff's constitutional rights. *Simmons v. City of Philadelphia,* 947 F.2d 1047, 1059 (3d Cir. 1991). Mere negligence is not enough.

Finally, the plaintiff must show that the municipality was the "moving force" behind the injury alleged. *Berg v. County of Allegheny,* 219 F.3d 261, 275 (3d Cir. 2000). As the United States Supreme Court recently stated:

> In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983. A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train. *See Oklahoma City v. Tuttle,* 471 U.S. 808, 822–823 (1985) (plurality opinion) ("[A] 'policy' of 'inadequate training'" is "far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in *Monell*"). To satisfy the statute, a municipality's failure to train its employees in a relevant respect must amount to "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." . . . Only then "can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983."

*Connick v. Thompson*, --- U.S. ---, 131 S.Ct. 1350, 1359-60 (2011) (parallel and additional citations omitted).

Claims against state and local officials in their official capacity are, essentially, another way of proceeding against the state or municipality, as was recently summarized by a colleague

of this Court:

> Official-capacity suits . . . "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell*, *infra*, 436 U.S. at 690, n. 55. On the merits, to establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right. *See, e.g.,* [*Kentucky v. Graham*, 473 U.S. 159, 166 (1985)]. More is required in an official-capacity action, however, for a governmental entity is liable under § 1983 only when the entity itself is a " 'moving force' " behind the deprivation, *id.* (quotations omitted); thus, in an official-capacity suit the entity's "policy or custom" must have played a part in the violation of federal law. *Monell*, *infra*; *Oklahoma City v. Tuttle*, 471 U.S. 808, 817–818 . . . "[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983". *Monell*, *infra*, at 694, 98 S.Ct. 2018.

Cahill ex rel. Cahill v. Live Nation, --- F.Supp.2d ----, 2011 WL 5517136, *15 (W.D.Pa. 2011)

(McVerry, J.) (parallel and additional citations omitted).

### C. Personal Supervisory Liability

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior,* only for their personal involvement in the alleged wrongs. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Individual-capacity suits seek to impose personal liability upon an official for actions he takes under color of state law. *See, e.g., Graham*, 473 U.S. at 165–66; *Scheuer v. Rhodes*, 416 U.S. 232, 237–238 (1974). This personal involvement can be shown where a defendant personally directs the wrongs, or has actual knowledge of the wrongs and acquiesces in them. *Id.; A.M. ex rel. J.M.K. v. Luzerne County Juvenile Det. Ctr.,* 372 F.3d 572, 586 (3d Cir. 2004) ("a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to

violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations").

Actual knowledge "can be inferred from circumstances other than actual sight." *Baker v. Monroe Twp.,* 50 F.3d 1186, 1194 (3d Cir. 1995). Acquiescence is found "[w]here a supervisor with authority over a subordinate knows that the subordinate is violating someone's rights but fails to act to stop the subordinate from doing so, the factfinder may usually infer that the supervisor 'acquiesced' in (i.e., tacitly assented to or accepted) the subordinate's conduct." *Robinson v. City of Pittsburgh,* 120 F.3d 1286, 1294 (3d Cir. 1997).

*Santiago v. Warminster* involved section 1983 claims against supervisory officers and the municipality for injuries sustained because of excessive force by Warminster Township police officers during a raid on the plaintiff's home. Ms. Santiago alleged that three senior officers planned or acquiesced in the use of excessive force, and that the Township was liable for the police chief's plan because he was a final policymaker for the Township.

The Court of Appeals explained that there are two theories of supervisory liability in a section 1983 action: (1) supervisors can be liable in their official capacity if they established and maintained a policy, practice, or custom which directly caused constitutional harm; or, (2) they can be liable personally if they participated in violating the plaintiff's rights, directed others to violate them, or, as persons in charge, had knowledge of and acquiesced in their subordinates' violations. 629 F.3d at 128-29. [3] Additionally, plaintiff is required to show that the supervisor's

<hr>

[3] The *Iqbal* case stated that because "vicarious liability is inapplicable to § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal,* 129 S.Ct. at 1948-49. Thus, the Supreme Court noted that in section 1983 actions, where master-servant liability is extinct, "the term 'supervisory liability' is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Id.*. Our Court of Appeals has recognized the potential effect that *Iqbal* might have in altering the standard for supervisory liability in a section

policy, practice, or custom, or his directions to subordinates, was the proximate cause of the use

of excessive force and plaintiff's injuries.  *Id*. at 130;  *Luzerne County Juvenile Det. Ctr.*, 372

F.3d at 586 (to sufficiently state a claim for supervisory liability, plaintiff must allege "a causal

connection between the supervisor's direction and that violation, or, in other words, proximate

causation. Proximate causation is established where the supervisor gave directions that the

supervisor 'knew or should reasonably have known would cause others to deprive the plaintiff of

her constitutional rights.'" . . . The connection alleged between the supervisor's direction and the

constitutional deprivation "must be sufficient to 'demonstrate a "plausible nexus" or "affirmative

link" between the [directions] and the specific deprivation of constitutional rights at issue.'")

(quoting *Hedges v. Musco*, 204 F.3d 109, 121 (3d Cir. 2000)).

## D. *Kipp v. Allegheny County*

In *Kipp v. Allegheny County, et al.,* 2012 WL 1463309 (W.D.Pa. April 27, 2012),  a

colleague on this Court, the Honorable Terrence F. McVerry,  dismissed failure to discipline,

failure to train and deliberate indifference claims under section 1983 against the County and ACJ

Warden Rustin pursuant to Fed.R.Civ.P. 12(b)(6). Kipp involved a remarkably similar scenario

to that presented herein regarding alleged mistreatment by corrections officers at the Allegheny

County Jail after Mr. Kipp was arrested and held as a pretrial detainee.  Mr. Kipp's Amended

Complaint alleged that corrections officers assaulted him without provocation, denied him

necessary medications, and denied him medical treatment.  Regarding Warden Rustin, the

Amended Complaint asserted that he had adopted "failure to discipline" and "failure to enforce"

---

1983 suit, but, to date, has declined to decide whether *Iqbal* requires narrowing of the scope of the supervisory liability test. *Santiago*, 629 F.3d at 130 n. 8 ("[n]umerous courts, including this one, have expressed uncertainty as to the viability and scope of supervisory liability after *Iqbal*."); *Argueta v. United States ICE*, 643 F.3d 60, 70 (3d Cir. 2011) ("To date, we have refrained from answering the question of whether *Iqbal* eliminated -- or at least narrowed the scope of -- supervisory liability because it was ultimately unnecessary to do so in order to dispose of the appeal before us.").

policies with respect to the use of excessive force and violations of the medical treatment policy at ACJ, but did not assert any "actual facts" in support. *Id*. at *4.

In dismissing the claims against Warden Rustin with prejudice, the Court noted that the Amended Complaint "merely contains bald legal conclusions" that Rustin established these "failure to discipline" policies, was aware of the risks to prisoners, and knew of some prior attacks by unnamed corrections officers, and that the attack on Kipp and delay in medical treatment resulted from Warden Rustin's *de facto* policies. *Id*. at *10. Judge McVerry held that, as explained in *Santiago*, "such formulaic recitations of the elements of a claim will not suffice." *Id*. at *5.

With regard to Allegheny County, Mr. Kipp asserted that he was entitled to relief because the County "was aware of prior attacks by corrections officers on inmates; . . . attempted to save money by minimizing outside medical care; . . . failed to discipline officers for violating the 'use of force' and 'medical treatment' policies . . . ," and "failed to adequately train its corrections officers." *Id*. The Court found, however, that these were "bald assertions unsupported by any facts," and that Mr. Kipp's Amended Complaint did no "more than conclusorily and formulaically recite the elements" of the section 1983 claim. *Id*. Moreover, Mr. Kipp failed to plead actual facts showing that the County was "responsible either for enacting, implementing, or engaging in a widespread practice which constitutes or causes a constitutional violation which plausibly give rise to an entitlement to relief." *Id*. Therefore, the Court dismissed the claims against Allegheny County with prejudice.

## IV.     Analysis and Conclusion

The glaring deficiencies in Mr. Kipp's Amended Complaint are the same as those in Ms. Neil's Amended Complaint, and are equally glaring. There are no allegations whatsoever in the Amended Complaint that Warden Rustin, or any other officials of the City of Pittsburgh or Allegheny County, personally participated or directed others to use excessive force against Ms. Neil, or that Allegheny County, the City of Pittsburgh, or any of their officials, including Warden Rustin, adopted or implemented any policies, practices or customs (i.e., "practices so persistent and widespread as to practically have the force of law") that directly caused her constitutional harm and injuries. Having amended her complaint once, it is apparent that Plaintiff is unable to meet her burden of pleading facts making such claims plausible.

The fact that Plaintiff names another ACJ pretrial detainee and another citizen arrested by City of Pittsburgh police officers against whom excessive force was allegedly used nudges the Amended Complaint ever so slightly forward along the plausibility continuum, but not far enough to survive these defendants' motions to dismiss.

Without belaboring the analysis, *Kipp,* and the well-established precedent upon which it relies, is persuasive and compelling authority counseling strongly in favor of dismissing all claims in the Amended Complaint against Warden Rustin, the City of Pittsburgh and Allegheny County with prejudice.  Because Plaintiff fails to assert actual facts in her Amended Complaint

that would plausibly support her claims against these defendants, the Court will grant the pending motions to dismiss, and will dismiss these defendants.

A separate order will follow.

s/ Cynthia Reed Eddy
CYNTHIA REED EDDY
UNITED STATES MAGISTRATE JUDGE

cc: All counsel listed on CF-ECF